statute. The duty to render a statement attached the moment the written request was made of him by the shareholder. The 30-day provision is solely for his benefit and convenience. Its obvious purpose is to afford the fiscal officer charged with the duty the opportunity of making the necessary examination and inquiry in order to enable him to comply with the request. But the obligation, rests upon him the moment the demand is made; he cannot avoid it by surrendering his office; the duty has attached; he may, at his option, discharge it at any time within the 30 days; but he cannot relieve himself of the responsibility. The effect of the time provision upon the shareholder is merely a suspension of his remedy; the right was complete with the filing of the request. I am aware that the statute is highly penal, and must accordingly be strictly construed. This does not mean, however, that a construction should be adopted which would defeat its beneficial purpose. Demurrer as to the first defense sustained. Demurrer as to the second and third defenses overruled. Settle order on notice."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

W. P. Pickett, for appellant.
W. F. Cooke, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of court below.

---

(69 App. Div. 37.)

In re PRICE et al.

In re CROCKER.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

1. INSOLVENCY—SPECIAL PARTNER—PAYMENT OF FIRM DEBTS—CLAIM—ALLOW-ANCE.

A special partner of a firm of stockbrokers at the time of the general assignment of the firm was its debtor, and had pledged stocks to it as collateral. The firm had repledged the stock to secure its debts. The owner, to regain the stocks, after tendering the amount of his debt to the assignee, by agreement with him, paid to the firm's pledgees the market value of his stocks; the amount so paid (being largely in excess of his debt) being credited by such pledgees on the firm debts, and to him by the assignee to the amount necessary to liquidate his debt to the firm. The collateral pledged to the firm creditors, who held the petitioner's stocks, realized a large sum in excess of the debts so secured; such excess being returned to the assignee. *Held*, that by the assignment of the partnership the firm was dissolved, and the status and relative rights of such special partner and the firm creditors were then fixed, and the special partner might subsequently become a creditor of the firm, entitled to a pro rata distribution of its assets, notwithstanding Partnership Law, § 37, providing that a special partner of an insolvent firm shall not be allowed to claim as a creditor until other creditors are satisfied.

2. SAME—PLEDGE OF STOCKS—REPLEDGE—OWNER—CREDITOR.

The fact that the stocks of the special partner were repledged by the firm to secure its debts did not destroy his title thereto, or change his claim as owner to a claim as a creditor, within the meaning of Partnership Law, § 37.

8. SAME—TENDER—RELEASE OF LIEN.

The tender by the special partner of the amount of his debt to the firm, and demand for his stocks pledged to secure such debt, released such stocks from the lien of the firm.

**4. SAME—SPECIAL PARTNER—PAYMENT FOR FIRM—CLAIM—OTHER REMEDIES.**
The payment by the special partner, with the consent of the assignee, of a part of the firm debts, in redeeming his stocks from the firm's pledgees, entitled him to claim equally with other creditors from the time of such payment against the estate of the firm for the amount so paid, notwithstanding Partnership Law, § 37, and notwithstanding he had other and more effectual remedies.

Van Brunt, P. J., dissenting.

Appeal from judgment on report of referee.

Application by George Crocker, who was a special partner of the firm of Price, McCormick & Co., for the allowance as a claim by the assignee of such firm of the sum paid by petitioner, after the assignment, in paying the firm debts. From an order disallowing his claim, the petitioner appeals. Reversed.

The proceeding is one under section 26 of the general assignment act, which provides for a trial before a referee of any disputed claim or matter arising under the provisions of that act. The facts are not disputed. Price, McCormick & Co. were stockbrokers, and on May 24, 1890, made a general assignment for the benefit of creditors. The petitioner, George Crocker, was a special partner, and was also a customer of the firm, keeping with it a speculative account. On the day of the failure he appeared on the books to be "long" of 3,325 shares of stock, and owed the firm $114,811.99. At that time Mr. Crocker was in Europe, but on hearing of the failure he immediately cabled his agents to act for him in the premises, to protect his interests, and to do what was necessary to get possession of the stocks in his account. The amount due from him was tendered to the assignee and the stocks were demanded. The assignee, however, did not have the securities, nor did they thereafter come into his possession, for prior to the assignment they had been repledged by the firm with various bankers, and mingled with other securities. Failing, therefore, to secure the shares, Mr. Crocker's agents obtained from the assignee letters to the several bankers with whom the stocks had been pledged as collateral for loans made to the firm of Price, McCormick & Co. There were 12 of these letters in all, 11 of which were in the following terms:

"Dear Sirs: Messrs. C. I. Hudson & Co., representing creditors of Price, McCormick & Co., desire to redeem the under-mentioned securities held by you as collateral to loans of Price, McCormick & Co., paying the market price, as of this date, as per annexed list. I have no objection to your making such delivery, and crediting the proceeds on account of the loan of Price, McCormick & Co. held by you.

"W. J. Curtis,
"As Assignee of P., M. & Co."

The twelfth letter was in precisely the same form, except that, instead of the phrase, "I have no objection to your making such delivery," the assignee used the words, "I hereby authorize and request you to make such delivery."

Upon the presentation of these letters, the various bankers to whom they were addressed surrendered to Mr. Crocker's agents the shares belonging to him; they simultaneously paying the bankers the market price of the day for such shares, amounting in all to $177,162.50, being $62,350.51 more than the amount due to the firm from him when it failed. The bankers subsequently sold or surrendered to the assignee all of the other collateral to Price, McCormick & Co.'s loans, with the result that the 12 loans to that firm were all paid in full, and a large surplus remained. The total amount of the 12 loans was $1,750,000, while the collateral sold or surrendered was worth $2,352,855.73. This left a surplus, which the assignee received, amounting to $602,855.73. The details of each of these loans, showing what stocks of Mr. Crocker's were in each, what he paid to get possession of them, and the surplus in each loan repaid by the pledgee to Mr. Curtis as assignee of Price, McCormick & Co., are set forth in the exhibits. The referee held that, Mr. Crocker having been a special partner, his claim for

74 N.Y.S.—40

what he had paid over and above the amount he owed to the firm was that of a creditor which was not entitled to payment until the claims of all other creditors were first satisfied. Exceptions were filed to the decision, but, on motion subsequently made, an order was entered confirming the report of the referee and dismissing the petition, from which order the petitioner appeals.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Eugene D. Hawkins, for appellant.
Edward B. Hill, for respondent assignee.

O'BRIEN, J. Assuming the premises upon which the referee acted, it is difficult to escape from the general reasoning by which, in his able opinion, he reaches the conclusion that the petition of Mr. Crocker should be dismissed; but we differ with him because of our view that by the dissolution of the firm there was brought about a radical change in the relationship of the parties.

Section 37 of the partnership law provides that:

"A special partner may * * * loan money to and advance and pay money for the partnership * * * and has the same rights and remedies in these respects as other creditors might have. * * * If such partnership becomes insolvent or bankrupt, a special partner shall not, except for claims contracted in pursuance of this section, be allowed to claim as creditor until the claims of all the other creditors of the partnership are satisfied."

In construing this section, we must keep in mind what was evidently intended to be effected by it, namely, to prevent any claim of a special partner which arose out of dealings with the partnership during its life, other than in the exceptional instances specified, from being paid at its death, through insolvency or bankruptcy, until the claims of other creditors were satisfied. The general assignment for the benefit of creditors amounted to a suspension or dissolution of the partnership itself (Welles v. March, 30 N. Y. 350), and any claim which the special partner then had as creditor was undoubtedly to be deferred, under the statute. Upon the dissolution of the firm, however, the rights became fixed, and the relations between the partners were severed; and, although the transactions between Mr. Crocker and the firm up to that time were clearly governed by the statute, this in no sense prevented him thereafter, as an individual, from obtaining a new status, growing out of subsequent transactions. This view, we think, finds support in Hayes v. Heyer, 35 N. Y. 330. In that case Ketchum was a special partner in the firm of Hayes & Heyer, which had given promissory notes of the firm for various amounts, and these notes at the time of its dissolution were outstanding. After such dissolution, another firm with which Ketchum was connected, upon his agreement to indemnify it, took up the notes; and Ketchum thereafter, in fulfillment of his guaranty, reimbursed that firm. In discussing the claim of the defendant Ketchum individually against the partnership of Hayes & Heyer, it was said:

"This was not acquired by him until after the dissolution of the said partnership, or, in other words, after it had ceased to exist. The acquisi-

tion of this debt by the defendant Ketchum cannot rightly be regarded as transacting any business on account of or with said partnership. He was not a special partner at the time he became the creditor of the limited partnership, or, more strictly speaking, of the general partners thereof, and acquired the right to participate in its assets. None of the evils which the legislature intended to guard against could arise from the fact that the special partner became a creditor after the dissolution of the partnership. The statute does not prohibit his becoming such, and it was only debts he might have as special partner, accruing while he sustained that relation, which by the terms of the statute are to be postponed to the claims of other creditors. Ketchum by the purchase or transfer of this debt was subrogated to the rights of the creditors holding the same, and is equally entitled with them to participate in the distribution of the assets of the partnership. Those from whom he purchased would have been entitled to share therein, and, Ketchum having acquired their rights after he ceased to be such special partner, no reason appears why he has not the same right."

Applying the reasoning of that case to the facts here, we find that, at the date when the general assignment was made which resulted in the dissolution, Mr. Crocker was a debtor to the firm of Price, McCormick & Co. to the extent of $114,811.99, and that as security therefor they held certain of his stocks. He was not a creditor in any sense, nor had he any claim against them, unless we extend the meaning to be given to the word "claim" so as to include the right which he then had, upon the payment of his indebtedness to the firm, to get back his securities. This right he could have asserted against the assignee if the latter, under the assignment, had received the stocks; but, although the petitioner tendered the amount due and made a demand, the assignee was unable to respond, for the reason, as stated, that prior to the assignment the securities had been repledged by Price, McCormick & Co. to various bankers, who then held them as collateral to loans made to the firm. This being the situation at the date of the assignment, and when the assignee took possession of the assets of the firm, any claim which the special partner had as creditor would have been covered by the statute. As we have said, however, he was not then a creditor, but a debtor; and, having by the dissolution ceased to be a partner, there was nothing to prevent him, as an individual, from becoming subsequently a creditor of the firm.

As pointed out by the learned referee, the petitioner had several courses open to him in order to protect his interests and obtain his securities. It would, however, serve no useful purpose to discuss what might have been his rights had he pursued some other course, since we are concerned with what rights he has in view of the action he actually did take. In going, with the assent of the assignee, to the bankers who held his stocks, and paying them the full market value, he thereby not only paid what he owed his former firm, but, to the extent of the excess over and above his indebtedness, he paid the debt of that firm, and the surplus which the bankers returned to the assignee was swelled to that amount. No doubt, had he required the bankers to sell the other securities in payment of the firm debt first, or had he notified them not to sell his securities, he might have regained them upon the payment of his own indebtedness. That there was other collateral sufficient to pay the entire debt of the firm, without the contribution which the petitioner thus made, is evi-

dent from the large surplus turned over to the assignee. It is true that the bankers had a claim or lien superior to that of the firm, and, to the extent of their advances, superior to that of Mr. Crocker; but this did not deprive him of his right to redeem, nor did it destroy his title to the stocks, or change his claim as owner to a claim as a creditor, within the meaning of the statute. The effect of his tender and demand upon the assignee was to release his securities, or the proceeds thereof, from the lien of the firm; and the action of the assignee in assisting Mr. Crocker to get his stocks was not coupled with any waiver on the part of the latter of any of his rights; nor can it be construed as a consent that, to the extent of the excess which he paid of $62,286.73, he should be deprived from sharing in the fund from which the assignee was to pay the other creditors. That one who endeavors to reclaim his own property which has been wrongfully placed in the hands of a third party, and who pursues his legal rights in that endeavor, should be penalized in such a large amount, seems manifestly unjust. Nor do we think, however strictly the statute relating to the rights of special partners is construed, that it can be regarded as supporting the conclusion reached by the referee. Had the petitioner adopted one of the other methods suggested, he could have obtained his securities upon paying his debt, or, if obliged in the first instance to pay the market price, then to the extent of the difference he could have recovered. And although, for the reasons stated by the referee, the course he pursued prevented his getting the benefit of the right to be subrogated to the position occupied by the bankers, and therefore prevented his recovering this difference in full, it resulted, in our opinion, in establishing a new and independent relation after the firm had been dissolved, which entitled him, as a creditor, to share with the other creditors equally in the assets of the firm. This right accrued for the reason that when he made the payment to the bankers and became a creditor, and his claim arose, he was no longer a special partner. Were we, however, to regard all his dealings as comprising a single transaction, which terminated upon his payment to the bankers, then it may well be argued, why, under this aspect, was he not entitled, by virtue of the statute, to be considered as a creditor, with the same rights and remedies as other creditors? Section 37 of the partnership law expressly provides that a special partner may "pay money for the partnership," and to that extent share in the rights and remedies of other creditors; and, although Mr. Crocker made the payment in the effort to get back his own securities, the fact remains that, as the result of the negotiation, he did pay money for the partnership, and in discharge of its indebtedness. The effect, therefore, as contended by the appellant, was that the firm received from the petitioner, upon the redemption of the stock, $62,288.73 more than he owed the firm. That sum went directly to pay the debts of Price, McCormick & Co.; and we do not see why it should not be regarded as a payment of money "for the partnership," and thus within the exception of section 37 of the statute. The illustration used by the appellant we think apt. Suppose the firm had given promissory notes upon which Mr. Crocker was indorser, and these notes had be-

come due after the insolvency of the firm, and Mr. Crocker, as indorser, was compelled to pay them; would not such payment have been an advance of money for the firm, entitling Mr. Crocker, under this section of the statute, to share with other creditors? We prefer, however, to rest our decision not upon this exception stated in section 37 of the partnership law, but upon the ground that the assignment worked a dissolution of the firm, which ended the partnership relation, and thereafter, to the extent that the petitioner was obliged, in order to obtain his property, to pay in excess of his indebtedness, he is entitled to share equally with the other creditors in the distribution of the assets of the firm.

We think, therefore, that the order should be reversed, with costs; and as the facts are undisputed, and there would be no advantage in a new reference, the petitioner's application, to the extent that he be paid pro rata with the other creditors by the assignee, should be allowed. All concur, except VAN BRUNT, P. J., who dissents.